[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal arises out of a judgment of the Municipal Court of Sidney, Shelby County, wherein Gaier's Garage Inc. ("Appellee") recovered $13,062 for damage to one of its dealership vehicles which was incurred due to the negligent acts of an Exel Logistics Inc. ("Appellant") employee. The court computed the judgment based upon the Manufacturer's Suggested Retail Price of the vehicle, a salvage value estimate and seventeen months worth of floor plan interest.
We reverse the judgment of the trial court insofar as it relates to the calculation of damages.
Appellee is a licensed dealer of Chrysler, Plymouth, Dodge, Jeep and Eagle automobiles with a dealership located in Fort Loramie, Ohio. Appellant has delivered automobile parts by truck from Michigan to Appellee's dealership on a regular basis for several years.
On August 21, 1996, Appellant's employee was making a routine parts delivery to Appellee's lot when a metal cage used to hold the transported parts slipped from the hydraulic lift of Appellant's truck and landed on a 1996 Chrysler Cirrus LX Sedan which Appellee owned and had placed on the lot for sales purposes.[1] The accident caused cosmetic damage to the vehicle's roof, windshield, hood and left front fender.
On April 11, 1997, Appellee filed a complaint alleging that Appellant's employee acted negligently and proximately caused damage to the Cirrus. Appellee demanded judgment in the amount of $10,736[2] and requested the court to award interest from the date of the accident. Appellant answered the complaint and denied liability.
The case proceeded to a bench trial on January 6, 1998. At the commencement of the trial, counsel for both parties stipulated on the record that Appellant's employee had been negligent on the date of the accident and had proximately caused the damage to the Cirrus. Thus, the amount of damages was the only remaining issue before the court.
The testimony revealed the following pertinent facts:
 Appellee paid $17,595.40 for the Cirrus while the Manufacturer's Suggested Retail Price (MSRP) was $18,895. Immediately following the accident, the vehicle was moved to a storage lot located on Appellee's property where it remained in its damaged condition until the morning of the trial.[3]
In the fall of 1996, Appellant's insured, Great West Casualty, assessed the damage and presented Appellee with a check for $1,271 for the total cost of repairs and as settlement for all claims of property damage to the Cirrus. Appellee refused the check because it disagreed with Appellant's assessment.
In December, 1997, Appellee received a salvage bid in the amount of $7,559 from Kenny's Auto Wrecking. In addition, in February, 1997, Appellee hired a private appraiser from Casualty Appraisal of Lima, Ohio, to assess the cost of repairs. Appellee's private appraiser estimated that the total cost to repair the Cirrus would be $3,228.78. The appraiser also stated that the value of the vehicle after the accident was $7,559.
Witnesses for Appellant stated that the difference between the value of the Cirrus before the accident and the value after the accident could not be determined until the vehicle was repaired and a market survey of similar vehicles could be conducted. Since the Cirrus had not been repaired at the time of trial, Appellant did not submit any values to the court.
In support of the interest that Appellee requested, the court heard testimony that the Cirrus was financed pursuant to a floor plan loan through Star Bank. Because of the financing agreement, Star Bank charged Appellee a monthly interest rate for each vehicle on the dealership lot. Appellee calculated interest at $2,326 since the Cirrus was on the lot for approximately five hundred days from the time of the accident to the date of trial.
Based upon the foregoing, the trial court entered a judgment against Appellant in the amount of $13,062 on March 2, 1998. The court calculated this figure by subtracting $600[4] from the MSRP value ($18,895) to arrive at $18,295. This figure represented what the court considered to be the value of the Cirrus just prior to the accident. The court then subtracted what it considered to be the value of the vehicle immediately following the accident ($7,559) from $18,295 to conclude that Appellee's total loss on the Cirrus was $10,736. The court then added $2,326 in floor plan interest because the court found it "was a proximate cause of [Appellant's] negligence and there was no realistic way to minimize this element." Therefore, the court found that the total damages to the Cirrus was $13,062 and entered judgment accordingly.
The instant appeal followed.
Appellant asserts the following as its first assignments of error:
I.
 The trial court erred in its calculation of damages sustained by Plaintiff.
Appellant argues that the trial court misapplied the relevant law in calculating the final judgment amount. We find that this contention has merit.
According to the written briefs submitted in this appeal, both parties agree that the law regarding the recovery of loss on an automobile damaged due to negligence has been established by the Supreme Court of Ohio in Hayes Freight Lines v. Tarver (1947),148 Ohio St. 82:
 Where a motor vehicle has been damaged through the negligent acts of another only to such extent that it is reasonably capable of being repaired within a reasonable period of time after its damage, the owner may recover not only the difference in value of the vehicle immediately before and immediately after the damage, but may also recover the loss of the use of the vehicle for such reasonable period of time as is necessary to make the repairs.
 Id. at paragraph two of the syllabus.
In the case at bar, the evidence established that the Cirrus was not a total loss since it was reasonably capable of being repaired. Thus, based upon the above quoted language, Appellant was entitled to recover the difference between the value of the vehicle just prior to and immediately after the accident. However, we find that the trial court arrived at the difference between the value of the vehicle prior to and after the accident by using incorrect figures.
More specifically, the trial court first erred by using the MSRP instead of Appellee's cost for the vehicle to represent the value of the Cirrus immediately before the accident. The value of the vehicle to Appellee, as the owner, was proven to be $17,595.40. The MSRP is not relevant to this particular inquiry since it is speculative as to whether the vehicle could have been sold for the MSRP amount. Thus, the trial court should have used Appellee's cost, less the mileage discount, as the value of the Cirrus immediately before the accident.
Next, the trial court erred by using an incorrect figure to represent the value of the vehicle immediately after the accident. For instance, Appellee's private appraiser from Casualty Appraisals stated that the vehicle was worth approximately $7,559 after the accident. However, that statement was made in a letter written in February, 1997. The testimony at trial revealed that all vehicles depreciate on some level each day. Thus, the appraiser's opinion of the value of the vehicle six months after the accident is not an accurate reflection of the Cirrus' valueimmediately after the accident. See Hayes, supra. Therefore, the trial court erred in utilizing the above value for the calculation of damages.
In addition, we find that the trial court erred in subtracting $7,559 from the proposed value of the vehicle immediately before the accident because the evidence demonstrates that this was the salvage value of the Cirrus. Appellee was quoted that exact figure in December, 1997, from Kenny's Auto Wrecking. Although Appellee has argued in its appellate brief that the estimate from Kenny's Auto Wrecking was an offer to purchase rather than a salvage bid, we are not persuaded. Indeed, Kenny's Auto Wrecking referred to the "offer" as a salvage value on its printed form and there is no evidence in the transcript to suggest that the estimate was anything but a salvage bid.
Relevant case law states that a salvage value should be used to calculate damages only if the vehicle cannot be repaired. SeeMaloney v. General Tire Sales (1973), 34 Ohio App.2d 177. The evidence in this case reveals that Appellee considered the vehicle to be repairable. Therefore, the trial court's use of a salvage bid was inappropriate because such a figure was irrelevant to the determination of Appellee's damages. Thus, because the trial court misapplied the law and used inappropriate figures in its determination of Appellee's damages, we find that the final judgment in this case was erroneous. Accordingly, we sustain Appellant's first assignment of error.
Appellant asserts the following as its second assignment of error:
II.
 Since Plaintiff's vehicle was not a total loss, the trial court erred when it ignored Plaintiff's failure to mitigate damages.
Although not clearly stated in the second assignment of error, Appellant argues that the trial court erred by essentially rewarding Appellee for failing to repair the Cirrus and minimize its damages. More specifically, Appellant contends that the trial court should have determined the judgment based upon the cost of repairs rather than upon the difference between the value immediately prior to and immediately after the accident. We disagree.
Appellant urges us to follow the Tenth District's holding inAllstate Ins. Co. v. Reep (1982), 7 Ohio App.3d 90, 91, wherein the court stated that the cost of repairs is an acceptable measure of damages as long as said costs do not exceed the difference between the value of the vehicle immediately before and immediately after the accident. We decline to follow the Tenth District since the Supreme Court of Ohio has established the clear rule that the measure of damages in a case like the one sub judice
is the difference in the value of the vehicle immediately before and immediately after the accident. See Hayes, supra.
Moreover, we note that even if we were inclined to adopt the reasoning of Allstate, the trial court in this case could not have calculated damages based upon a cost of repair method because the court could not accurately determine whether said cost, regardless of which party's repair estimate was used, would have exceeded the difference between the value of the Cirrus just before and just after the accident.
Consequently, Appellant's second assignment of error is overruled.
We now turn to discuss Appellant's fourth assignment of error since its resolution is dispositive of the remaining issues:
IV.
 The trial court erred in awarding floor plan interest when Plaintiff failed to mitigate its damages.
In its March 2, 1998, judgment entry, the trial court stated that Appellee was entitled to $2,326 in floor plan interest because it was proximately caused by Appellant's negligence and could not be avoided. We disagree and find that Appellant's fourth assignment of error has merit.
We note at the outset that although Appellant has characterized Appellee's refusal to repair the Cirrus as the failure to mitigate damages, the "refusal" is more accurately described as a failure to minimize its damages.
 It is a fundamental principle of damages that one injured in his person or property by a wrongful act * * *, whether as a result of a tort or a breach of contract, must use reasonable care to avoid loss or to minimize the damages resulting. * * * A plaintiff who, through his negligence or failure to use reasonable care, has allowed the damages to be unnecessarily increased is not entitled to recover for the increased loss which might have been avoided by the performance of his duty.
30 Ohio Jurisprudence 3d (1981) 28-29, Damages, Section 16.
Appellee explains that it did not take measures to repair the Cirrus within the seventeen months between the time of the accident and the commencement of trial because it intended to introduce the vehicle as evidence. During that time, however, Star Bank continued to charge Appellee monthly interest on the Cirrus due to a floor plan financing agreement.
While the Cirrus was the best evidence of Appellee's damage, we cannot conclude that keeping a vehicle in an unrepaired state so that a trial court may view damages is in accord with Appellee's duty to minimize damages. This is especially true when photographs which clearly and accurately reflected the damages were available. Thus, contrary to the trial court's opinion, we find that seventeen months of floor plan interest could have been avoided had Appellee taken ordinary, reasonable steps to have the Cirrus repaired. Appellant's fourth assignment of error is sustained.
Appellant asserts the following as its third assignment of error:
III.
 The trial court erred in granting Plaintiff recovery of floor plan interest when the same was not pleaded as a special damage nor recognized under Ohio law.
Due to our holding that the trial court erred in adding the floor plan interest to the final judgment, Appellant's third assignment of error is hereby rendered moot.
Appellant asserts the following as its fifth assignment of error:
V.
 The trial court erred in awarding judgment in exces s of the complaint's demand when no amendment was sought by Plaintiff at the close of the evidence pursuant to Civil Rule 15(B).
Due to our holding that the trial court erred in adding the floor plan interest to the final judgment, Appellant's fifth assignment of error is hereby rendered moot.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court. The case is remanded to the trial court for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
 BRYANT, J., concurs.
SHAW, P.J., concurs in judgment only.
[1] The Cirrus had been used as a company demonstration vehicle in the past and had approximately 6,000 miles on the odometer at the time of the accident.
[2] An explanation as to how Appellee arrived at $10,736 for property damage is discussed infra.
[3] Witnesses for Appellee stated that the Cirrus had not been repaired because it was intended to be presented as evidence in the instant action. Appellee further explains in the appellate brief that because Appellant denied liability and the amount of damages in its answer, Appellee "reasonably believed that a judicial view of the vehicle during trial was important * * *."
[4] The $600 represents the $.10 per mile that Appellee customarily discounts for demonstration vehicles that have already incurred mileage.